The Judges delivered their opinions.*
Judge Carr.
The plaintiffs in the Court below brought, their suit against the appellant (an agent of the Commonwealth) to recover their .freedom. Judith, the mother and grandmother of the others, was once the property of Ball. The State insists that they are still slaves, belonging to Ball’s estate, and subject to her judgment against Ball. They claim to be free, either under the will of Barrow, or of Hackley, and their chain of title is this; that Bull, some 45 or, 50 years past, sold or gave Judith (then a girl) to Mr. and Mrs. Barrow, his brother and sister: that Barrow, after many years possession, sold Judith and her descendants to his nephew Hackley, reserving his and his wife’s life in them: that Hackley, by his will, set them free at the death of Mr. and Mrs. Barrow; and that Barrow, by his will, confirmed to them their freedom. On the trial of the cause, the defendant demurred to the evidence. The Court gave judgment on the demurrer for the plaintiffs, and the defendant appealed. The demurrer contains all the evidence on both sides. This, I believe, is not in conformity with the practice in England or our sister States; but it has long been the settled practice of this State, sanctioned by decisions of this Court. I have always understood a demurrer (whether to pleadings or to *3 evidence) as raising a question of law purely; the demur-rant alleging that the pleading or the facts demurred to, are not sufficient in law to sustain the adversary. These indeed are the express terms of the demurrer. As the law arises upon the facts, it cannot arise until the facts be settled; and this is exclusively the province of the jury. I have seen this subject uo where treated with more perspicuity or ability, than in the opinion of Ch. J. Evre, in Gibson v. Hunter, 2 H. BL.187. He says, “In the first stage of that process under which facts are ascertained, the Judge decides whether the evidence offered conduces to the proof of the fact, and there is an appeal from his judgment by a bill of exceptions. The admissibility of the evidence being established, the question how far it conduces to the proof of the fact which is to be ascertained, Is not for the Judge to decide, but for the jury exclusively. When a jury have ascertained the fact, if a question arises whether the fact thus ascertained maintains the issue joined between the parties, or in other words, whether the law arising upon the fact is in favor of one or other of the parties, that question is for the Judge to decide. Ordinarily, he declares to the jury what the law is upon the fact which they find, and then they compound their verdict of the law and fact thus ascertained. But, if the party wishes to withdraw from the jury, the application of the law to the fact, and all consideration of what the law is upon the fact, he then demurs in law upon the evidence, and the precise operation of that demurrer is, to take from the jury, and to refer to the Judge, the application of the law to the. fact. In the nature of things, therefore, and reasoning by analogy to other demurrers, and having regard to the distinct function of Judges and of juries, and attending to the stage of the proceeding in which the demurrer takes place, the fact is to be first ascertained.” The opinion, from which this extract is made, is of the very highest authority, and all the books acknowledge it as settling the law. 7’his Court has, in several cases, referred to it as the ablest ex *4 position of the doctrine on this subject. The misfortune is, I think, that we have not acted up to the rules it establishes. One of these is, that the demurrant “shall distinctly admit upon the record every fact arid every conclusion, which the evidence demurred to conduced to prove.” Our practice has been to put all the evidence on both sides into the demurrer, and then to consider the demurrer, as if the demurrant had admitted all that could be reasonably inferred by the jury from the evidence given by the other party, and waiving all the evidence on his part, which contradicts that offered by the other party, or the credit of which is impeached, and all inferences from his own evidence which do not necessarily flow from it. I confess the English practice seems to me much the safest and best. In the first place, it is the simplest. The facts being settled one by one, the parties distinctly see the naked case, and understand precisely on what facts the Court will act; and passing these facts thus in review, the demurrant can more clearly see, before the step is irrevocably taken, whether he can safely demur; and the adversary is likewise enabled to discover, whether there be not some weak point in his evidence, which he has it in his power to strengthen. This analysing process, reducing the case to its elements, would also have a strong tendency to discourage demurrers to evidence; an effect, which Courts have generally thought would be beneficial. When the evidence merely is all put into the demurrer, and no facts settled, the parties can have little idea from this confused mass, what the case will be when the Court shall come to act upon it; and the Court itself (it seems to me) is inevitably led to assume the functions of a jury. I have thought it not amiss to express this opinion, though I have' not the slightest idea, in the present case, of attempting to disturb the practice.
I must also be permitted to regret, that it has been settled by the cases in this Court, that in demurrers to evidence, all the evidence on both sides is to be put into the record. It is a departure from the settled practice elsewhere; and *5 this alone, I think, is a solid objection, unless it could be dearly shewn, that by such change a material advantage was gained. But here, the change seems to me to be much for the worse. I can conceive few eases, in which the insertion of the demurrant’s evidence can be proper; few, In which it does not tend to confuse, perplex, and complicate the case. When a defendant demurs to the plaintiff’s evidence, he says, admitting it all to he true, it is insufficient in law to maintain the action. Putting himself thus, upon the law of the case, and thus withdrawing it from the jury, what propriety is there in his introducing evidence on his part ? The practice of putting the evidence on both sides into the record, is calculated to mislead the country. They suppose, that it must be for some purpose that the demurrant’s evidence is inserted; and they naturally conclude that the purpose is, that the Court, from the whole evidence, shall collect the facts of the case, and then pronounce the law arising on them. I have very little doubt that the demurrer in the case before us was filed under this delusion; and it seems to me a strong illustration of the mischief of the practice; for, it has lost a cause to the defendant, about which, I believe, there would have been little doubt with a majority of the Court, if the same facts liad appeared in the form of a special verdict, or a case agreed; and 1 have no doubt, they would have appeared in one of these forms, or have been left to the jury, had the counsel supposed that by demurring he was to give up every tittle of his evidence. This however is the effect, as that evidence is considered as contradictory to, or making out a case inconsistent with, that of the plaintiffs. So strongly persuaded am I of the injustice of this decision, that I have looked carefully through the record for some circumstance which might avert it; and I thought that I had found one in the agreement of the counsel filed in the record. That agreement authorised us (it seemed to me) to consider the record of the judgment of the Commonwealth against Hack ley’s executor, as if plead *6 ed in bar; and then I should have had but little difficulty. But, it is discovered on a closer inspection, that the agreement bears date prior to the demurrer. Its terms, which to me seem doubtful, are regarded by my brethren as amounting only to a waiver of formal exceptions to the use of the papers filed, as evidence; and it.s effect is considered as done away by the demurrer subsequently filed. This is all perhaps correct; but I confess that my mind assents to it with great reluctance, I should have been much better satisfied to have awarded a venire de novo, as is sometimes done, when “the evidence is.so uncertain, or of such a nature, that the Court feel doubtful what facts to infer.” This, I feel assured, would have been a more probable means of obtaining the real justice of the case. The rest of the Court, however, think differently, and with them I leave the cause.
Judge Coalter.
This is an action by the appellees against the appellant, in forma pauperis, to recover their freedom. The declaration is the usual one of false imprisonment; to which the defendant pleads that the plaintiffs are slaves, on which issue is joined.
The plaintiffs being negroes, and it being admitted by them that Judith, the mother and grand-mother, was originally a slave, the property of one Ball, they place their title to freedom on this ground, that she was sold by Ball to Barrow, who had married his sister, and by whom she and her children were sold to his nephew Hockley, by whose will they were set free: The onus prohandi was thus at once thrown on them to prove these facts.
They accordingly produced evidence of such facts and circumstances as it was in their power to do; and the only matter of controversy which this evidence did not fully establish in their favor, was, whether Judith was a gift or sale or a mere loan to Barrow. If the former, then, *7 without doubt, tho title passed to Barrow, and from him to Hackley; by whose will they are free. If the latter, then it might have been a question, whether, as Barrow had possessed Judith and her children, without claim or interruption for twenly years or more, before the alleged salo to Hackley, he (Hackley) had such knowledge of tho original loan, as that he could not acquire title, as it regarded Ball or his creditors, or rather the latter; for neither Ball in his life-time, either before or after the death of Hackley, nor his exeeutor since his death, although 30 or 40 years had elapsed from the time he parted with Judith, ever asserted any claim to her or her issue.
Considering tho case then as depending merely on the nature of the first transaction, and whether that was a sale or gift, or only a loan, the evidence on both sides, consisting of a variety of circumstances pro and can, was before the Court and jury How the jury would have decided as to this matter, we cannot say. I will only observe, for my own part, that had they found for the plaintiffs, I think the Court would not have been justified in setting aside their verdict as contrary to evidence. Suffice it, however, at present to say, that the counsel who conducted the do-fence withdrew the question from them, and demurred to the evidence; and, according to what was supposed to bft the law of this State, included in the demurrer all the evidence, as well that of the plaintiffs as of the defendant. This course has been sanctioned by many cases in this Court; but, this is the first one that has cotne under my notice, which brings the propriety or impropriety of that, practice, as a general and universal one, directly and in most of its bearings, to the view of the Court. It is necessary, therefore, that the propriety and effect of this practice should be examined into, at least so far as it touches this particular case; and that it should be settled, so far as a bare Court can do so. Any remarks, therefore, which I may make, and which may seem to go farther than such a ease as this, will only be considered as incident to the en *8 quiry we are at present bound to make, and not as intended to oppose the former cases, further than must necessarily result from the present decision. I feel the less restraint too on this subject, because as to mere matters of practice, the quo modo in which justice shall be administered, they can hardly be judged of except as cases arise. Any dictum or broad proposition, therefore, which may be laid down, and which, in the particular cases, may not trench on the great and leading principles on which our judicial system is founded, can have no weight, whenever found in conflict with those principles.
The position that the jury alone must find the fact, whilst it is the province of the Court to pronounce the law, is a first principle, a maxim in our system. A jury may find a special verdict, or the parties may agree a case, or move for instructions to the jury; or, there may be a demurrer to evidence, Syme v. Butler, &c. 1 Call, 105; in which case, if the evidence is positive, the demurrant must admit its truth; if circumstantial, he must admit, and if called upon must put on the record all the inferences which a jury might draw from it; and in this way ascertain the fact, without possible injury to the other party, and without any invasion of the trial by jury, Stephens v. White, 2 Wash. 203; and the facts being ascertained in either of these ways, the law remains open to be decided by the Court.
But, here is a case in which the whole evidence, consisting on both sides partly of written documents and partly of the oral testimony of a great number of witnesses, detailing many facts and circumstances tending on the one hand to prove a sale or gift of Judith, and on the other hand, a loan, is put into the record; and the question is, what are we to do, according to the decisions of this Court, with this mass of testimony ? If we weigh' it in equal scales, as a jury would, and say, on the whole, what it proves, it seems to me that we at once assume the province of a jury. If we reject the evidence of the demurrant, or, *9 (which is the same thing.) give it no weight at all, then the question is, do we conform to the decisions of this Court ?
Again: If there is a case in which any part of the dernurrant’s evidence ought to be considered as a part of the ease, though other parts ought not, as some of our decisions seem to indicate, it would seem to follow that as all the evidence ought to be in the record, the Court may judge what ought, and what ought not, to be considered by them. There is certainly a want of precision and clearness in our decisions on this point, calculated to mislead the country, and which has misled the counsel in this case, the consequences of which ought to be obviated as far as possible.
I have looked into all the cases which have been before this Court on this subject, and it seems to me that few or none of them, in practice at least, have gone the length we must go in this case, if we weigh any portion of the demurrant’s evidence.
In Hoyle v. Young, 1 Wash. 150, an action of slander on the plea of not guilty, the defendant, after introducing evidence in mitigation of damages, tendered a demurrer to the plaintiff’s evidence. This was objected to, because ho had examined witnesses; and the Court sustained the objection. In this Court, that point was given up by the counsel, as properly decided. But this Court take, it up and say, the proper rule is to allow a demurrer to evidence at any time before the jury retire, although the demurrant anay have examined witnesses on his part, the whole evidence on both sides being stated, (which in all cases ought to be done,) unless the Court think the ease clear against the demurrant; in which case, the hooks agree that the Court may refuse to receive the demurrer. This is the first ease in which this doctrine of stating all the evidence is laid down. There was no argument pro or con from the bar. It was a case, too, in which the evidence did not conflict with the right of the plaintiff to recover, but, was *10 merely to weigh in mitigation of damages, in case his evidence supported his declaration. The jury were to assess damages, either conditionally, before the trial of the demurrer, or on a writ of enquiry afterwards; and this evidence merely related to those damages. If put in the record, it could have no weight on the question, whether the declaration was supported, and but for the requisition to put it in the record, (the reason for which I cannot perceive, in that case,) I see no objection to that decision.
The cases of Hyers v. Green, 2 Call, 554, and Hyers v. Wood, 2 Call, 574, were writs of right, and the defence, in both cases, was non tenure, which was not pleaded, but offered in evidence to the jury on the mise joined. If this had been pleaded, and the evidence offered in support of the plea had not been such as it was proper only for a jury to weigh, being evidence of boundary, depending on surveys and a variety of facts and circumstances, no one would have doubted the right of the demandant to demur to the evidence adduced to support the plea. But, in the first place, here was no plea, and one question, and the main one, was, whether it was proper evidence on the general issue. In the first case, the demandant sought to try this question merely, by a demurrer to the evidence; and this demurrer, after stating the evidence of the tenant, says, to which the demandant demurred, &c. and produced in support of his right a copy of a patent, &c. and an Act of Assembly, &c. and a copy of a will, &c. (all written documents of record,) and prays judgment, &c. The tenant objected to join in demurrer, but for what reason is not stated; and the objection was sustained. The District Court reversed, because it was improper to permit the evidence to go to the jury, and because the Court refused to receive the demurrer.
The other case was like this in all respects, except that, in addition to offering a demurrer, the demandant objected to the evidence, which was also overruled, and except also, that the demurrer was objected to on the ground that it *11 contained the evidence on both sides. There was a similar judgment in the County and District Courts.
The first case was argued altogether, at first, on the ques-lion whether the evidence was proper on the mise joined. The Court afterwards directed the point, whether, in a demurrer to evidence, it was necessary to state all the evidence on both sides, to be spoken to.
Call, of counsel for the demandants, argued ably and at length that it was proper. Williams, on the other side, said he did not contest the doctrine. In this ease, the Court give no reason for their opinion, but simply reverse the judgment of the District Court, and affirm that of the County Court.
In the last ease, Judge Roane says, “As to the first objection stated by the tenant to the demurrer, I shall only say, that in the ease of Hyers v. Green, this Court, were of opinion, on consideration of the case of Hoy le v. Young, and other authorities, that the plaintiff ought, especially in a writ of right, also to set out his own evidence; ánd, in that ease, justified the rejection of the demurrer, on the ground that the demurrant had not stated a title to recover, in respect of his own identity. I am not certain,” he says, “ whether the Court, in Hyers v. Green, considered the ground of the second objection, although the demurrers in the two eases are, in that respect, substantially alike; but, I take the rule to be, that though the Court ought to award a joinder in demurrer, where the evidence demurred to is in writing, or, being parol, is explicit, and will not admit of variance, yet that when the parol testimony is loose, indeterminate, and circumstantial, the party offering it shall not he compelled to join in demurrer, unless the party demurring will distinctly admit every fact and conclusion which such evidence or circumstance may conduce, to prove;” and he adds, “the evidence in question, respecting the boundaries, the understanding of the country, &e. is entirely of this kind. The demurrer, therefore, may be thrown out of the ease.”
*12 Here, it would seem that the Court looked into the evidence of the demurrant, to see whether he had identified himself with his title, and thought he had not. Had the case turned on that point, it would seem to me, with great deference, that the Court would have invaded the province of the jury, in weighing the evidence.
But, in both cases, it was a mere question of boundary, as to the fact of the case; and as to the law, a mere question, whether such evidence was proper under *the-general issue; and all that is decided on the point now before us, is, that in a writ of right, if the plaintiff demurs, he must also set out his own evidence, so far at least as to identify himself with his title. The case before us-is not a writ of right, nor is the demurrer offered by the plaintiff.
In the case of Harrison v. Brock, 1 Munf. 22, which was an action of assumpsit, the plaintiff proved that Brock owed him a sum of money for work and labor. Brock introduced a witness to prove that his agent had paid the debt. The plaintiff introduced witnesses to discredit this evidence, and to prove that the agent cheated him, 8ic. The defendant demurred, and stated all the evidence on both sides. The plaintiff refused to join in demurrer, but was compelled to do so by the County Court, who finally gave judgment for him on the demurrer. The District Court reversed this, because of an award pendente lite, &c. This Court decided that there was no ground for a reversal, and affirmed the judgment of the County Court. Judge Roane says, “In a demurrer to evidence, it has been decided that the whole evidence must be stated, and thereupon the judgment of the Court is to be pronounced.”
“ The question, therefore, becomes important, whether, in the case before us, the Court rightly ruled the appellant to join in demurrer? It is admitted that a discretion exists, at least in cases depending on loose or contradictory testimony, and the question is, was the discretion rightly exercised here? The appellee’s testimony is contradictory to, and in conflict with, that of the appellant. It is true it is *13 not opposed to the testimony originally adduced by him, hut to that which came out, il' I may be permitted so to say, in the replication. But, in principle, that can make no difference. If the right of the appellee to compel his adversary to join, be absolute, what is it but to give credit to his own witness, or at least to carry it to be adjudged by an improper tribunal? This would be intolerable, and a good reason itself, to refuse to compel a joinder.” He proceeds; “As the County Court compelled the appellant to join in demurrer, without an explicit admission on the part of the appellee of the truth of the appellant’s testimony, so far as it conflicted with his own, or, what is the same thing, without a waiver of his own conflicting testimony,” he thinks the judgment was erroneous. But, as the error vvas in favor of the appellee, in compelling the plaintiff to join in demurrer, and as the final judgment would have been, a fortiori, for the appellant, if the appellee’s eonilictingtestimony had been excluded, and would, in that case, have been altogether correct, he affirms the judgment of the County Court. This case shews that, where the demurrant has offered evidence which conflicts with that on the other side, it ought to be waived; and if it is not, still it is not to be weighed at all. But, if the evidence of the party demurred to is sufficient to maintain the action or plea, judgment shall be given accordingly., Possibly, if the party had not demurred, but had taken his chance before the jury, he might have succeeded; but by demurring, he virtually waived his evidence.
It would seem, however, from other parts of Judge Roane’s opinion in this case, that he confines the doctrine to cases of credibility of evidence. When that is assailed, as was that case, he must waive such evidence; so that “ whilst it does not confer on the Court,” says he, “the power of judging of credibility, it does not take from if the power of inferring the facts admitted to be true.” The idea intended does not seem expressed with the usual perspicuity of that learned Judge; for, if the facts are ad *14 mitted, any inference from them would seem unnecessary. I presume, therefore, he must have intended inferences from circumstances proved by witnesses, whose credit is not impeached by opposing testimonj^. That would be very much the case now before us; and I think it will not be difficult to shew that such case is within the reasoning of the Judge on the main point, as I shall attempt hereafter. But that was a case of credibility, and when the Judge came to apply the rule, that all the evidence, on both sides, must be in the demurrer, it was soon found that it could not be weighed in that case, as I think it will be found that it cannot in this.
The case of Biggers v. Alderson, 1 Hen. & Munf. 54, was in detinue for slaves. The plaintiff had been long in possession; which the defendant seemed at once to admit, and that it threw the onus probandi on him; and he accordingly offered in evidence an attested copy of a bill of sale from the plaintiff to Joseph Smith, under a clause in whose will the defendant claimed them. This bill of sale was all the evidence offered by the defendant. It was objected to, because a copy was offered; but the objection was overruled. The plaintiff then offered parol testimony to prove an implied verbal release by Smith, of his right under the bill of sale; which was objected to by the defendant, but admitted. The defendant excepted, and also demurred to the plaintiff’s evidence; inserting also the bill of sale, which was all the evidence he produced. The demurrer was argued and overruled in the County Court, and judgment entered for the plaintiff. On removal to the District Court, that judgment was reversed, and the cause retained there; and finally, a verdict and judgment were rendered for the plaintiff.
The question argued in this Court, was, as to the admission of the plaintiff’s parol evidence. But it was deemed admissible. The judgment of the District Court was reversed, and that of the County Court affirmed. Here there was no dispute about the execution of the bill of sale, which *15 had been recorded. The only controversy was about the evidence going to prove the verbal release; and though the bill of salo was put in by way of inducement, the implied release was the only matter of dispute. It was not a case in which to try the merits of the matter now before ns, and may, in fact, have been a proper case for a demurrer, inasmuch as the effort to prove a release admitted the bill of sale, and went in avoidance.
So in the case of Hyer v. Shobe, 2 Munf. 200. It was an ejectment; and the evidence of the plaintiff demurred to, and that of the defendant put in also. The plaintiff claimed as devisee of A. who was heir at law of B, who had a lease for lives of himself, two sons, and a grand-son, renewable forever. The defendant claimed under the grand-children of B. who, after his death, sold the land to him, A. the heir at law, being then in captivity with the Indians, but afterwards returning, devised it to the plaintiff. The plaintiff was bound to make out a good title, whether the defendant had any or not. This being the case, there was nothing more natural, than by a demurrer to evidence, to submit the questions of law; one of which was, whether it was necessary for the plaintiff to prove that the lives had not expired, or that the lease had been renewed; and also, whether, being out of possession, the heir could devise. In short the plaintiff was to prove title in himself, or he could not succeed; so that the deed of the defendant, which was the only evidence offered by him, might have been thrown out of the ease.
The case of Norvell v Camm, 2 Rand. 68, was a writ of right, before a Special Court of Appeals, and which had formerly been before a like Court, and came up again after the second trial. The demandant offered a demurrer to evidence, which the tenants objected to join in for various reasons, and amongst others, that they would contend that the jury might infer from their evidence, that a patent had Issued to some one under whom they claimed; also, because he demandant’s title did not coyer the land ia eontroror *16 sy, and contested both the credit and sufficiency of the proof as to that.
It was contended on the other side, that the Court, and theywy, had, in that case, a right to infer a patent, if one could be inferred; and the authorities pro and con, were before the Court on that point. As to the difference between the witnesses, it was said to be unimportant; and as to the credit and sufficiency of the demandant’s evidence to prove that his patent covered the land in controversy, it was said, the parties were directly at issue, and it being a question for the Court, the tenants ought to have been compelled to join in demurrer. The Court was of opinion, that the evidence offered by the tenants, and by the demandant to rebut it, made a proper case for a demurrer; that the evidence of the demandant was consistent with that of the tenants, from the whole of which the conclusions of law would be more correctly drawn by the Court than the jury; and as to the uncertainty in regard to the identity of the land in controversy, if the demandant is entitled to recover as much of the 433 acres described in the count, as his patent for 6694 acres will include, the Court was of opinion that it sufficiently designates that quantity by metes and bounds, to enable the Court to identify it, upon the final decision of the cause.
As to this case, I will in the first place observe, that it was a case before a Special Court, which, from its organization, does not admit of that time for deliberate consideration, which justifies us. in holding those decisions of the highest authority, in ease there shall appear any substantial objections to them. This too, as before said, was a writ of right, and had been formerly before a similar Court; and it was complained that the decision of that Court had been evaded by the proceedings on the second trial. But, on the subject of the conflicting evidence, as it regarded the power to infer a patent from it, if it was decided that the Court were the proper tribunal to infer, if inference in that case could be made, then the evidence *17 Í0 rebut that presumption would, of course, be before the Court. But, if the inference was one which might be made, and it was proper that it should be made by the jury, and not the Court, then it seems to me, that this is a case, in which, by reason of the demurrer,, the Court was considered as invested with the power to examine the circumstances on both sides, and to find as if it were a special verdict. So too, as to the boundary; there may have been something in the case, as doubtless there was, to take it out of the principles established in Hyers v. Green and Hyers v. Wood, where it was settled that contrariety, of evidence, &tc. on a subject of this nature, was not proper for a demurrer, but for the jury.
Whittington v. Christian, 2 Rand. 353, is the las) case in this Court, and seems to place this question perhaps on a elearer ground, than any of the preceding cases, and to combine in it the whole doctrine, under our practico, which could be fairly extracted either from the decisions them» selves, or the principles recognized by the Court in for* mer cases; and perhaps ought to have saved me the trouble of so minute an examination of those cases. There may be this excuse, however, for my doing so. It. will be found that most of the doctrines there laid down, on this subject, were merely dicta, and so may be considered obiter, so far as they touch the case now before us. That was an ejectment by Christian against Whittington; and the Reporter having given no statement of the case, it does not clearly appear what evidencq was adduced on the one side, and what on the other. The defendant, however, demurred to the evidence of the plaintiff; in which the plaintiff refused to join, but was overruled by the Court, Who finally gave judgment for him. Tho ground why he objected to join, is not stated. One thing, however, seerns certain; that at least the patents to Norvell, under whom Whittington claimed, were put in the record. So far as this, it is seen that evidence on the part of the demurrant was in the record; and so far the case was like that of Hyer *18 v. Shobe above mentioned. If this was all, and if the naked possession of the defendant would have protected him equally unless the plaintiff shewed title, then it was no more, in substance, than a demurrer to the plaintiff’s evidence, as in the case of Hyer v. Shobe. But this was not all. The plaintiff claimed under an ancient patent, on which judgment of forfeiture had been pronounced by the Old General Court, for non-payment of taxes; and although the long possession and other circumstances detailed in the evidence, might have been sufficient to sustain an ejectment against any one not claiming under the Commonwealth; yet as Norvell, by the patents aforesaid, and those claiming under him, did so claim, it was necessary that the patents should appear in the case, in order to raise and try the question of law, whether lands so situated could be granted by such patents as those produced; and instead of moving for an instruction on this point, the course by demurrer to evidence, and placing the patents, which alone constituted the defence as to this matter, on the record, was resorted to. This case, then, was not like the one before the Court, but presents one of a peculiar kind., of which I will say something hereafter.
The dicta then, in this case, will only apply to the case before us; and if they are not a correct summary of the law as contained in previous cases, could hardly be taken as a decision overruling those cases. But, as this case may overrule any, if any there be, against it, it became necessary to I’eview them.
Judge Green, in his opinion, goes into the doctrine generally, and his views seem to have been concurred in by the other Judges; at least so far as concerned that case. He says, “the authorities on this subject, shewing the original practice of the English Courts, have been brought to the attention of the Court, and ably commented on. Prom these it appears, that the former practice was, to require the party demurring to admit upon the record the existence of all facts, which the evidence offered by the other *19 party conduced to prove. . Those facts were to he aseeriaiued by the Court, and in this respect, tho Court might err in opinion, and if it, did, and the other party refused to make the admission, he lost the benefit of his demurrer; or if he made the admission on record, it bound him irrevocably,” &c.
“To avoid this inconvenience, the modern practice is, especially in Virginia, where it has been sanctioned by re - peated decisions of this Court, to allow either party to demur, unless the ease be clearly against the party offering the demurrer, or the Court should doubt what facts should reasonably be inferred, from the evidence demurred to, in which case, the jury is the most fit tribunal to decide; to put all the evidence, on both sides, into the demurrer; and then to consider the demurrer, as if the demurrant had admitted all that could reasonably be inferred by a jury from the evidence given against him, and had waived all the evidence on his part, which contradicts that offered against him, or the credit of which is impeached; and also all inferences from his own evidence, which do not necessarily flow from it. With these limitations,” he says, “the party whose evidence is demurred to, has all the benefit of the ancient practice, which it was intended to give him, without subjecting the other party to its inconveniences; and no disputed fact is taken from the jury, and referred to the Court.”
Now, I am free to admit that this modern practice, especially in this State, where, in the hurry of jury trials, the party might be called on to admit facts which a jury ought not to infer, or lose his demurrer, is a very reasonable one, so far as it is considered independent of, and apart from, the practice, peculiar lo this Slate I believe, of putting all the evidence on the record, the object and bearing of which practice is now under consideration. As to this practice, so far as it submits evidence to the Court which tho party demurred to refuses so to submit, insisting on his ight to a trial by jury, unless the demurrant will, according *20 to ancient practice, confine himself to objections to the sufficiency of his evidence, it is certainly ah innovation; and the question is, whether it trenches on the trial by If it does, or so far as it does, it cannot be supported. In regard to this matter, it seems to me, that until cases from time to time arise, by which that practice can, in each case, be brought to the unerring standard, recognised by all, that the law is for the Court, the fact for the jury, we may err in laying down any general rule. Thus, according to the case just cited, where the demurrant introduces evidence on his side and then demurs, what part of his evidence is he to be considered as waiving? 1st. All that contradicts that which is offered by the other party. That is, for instance, where a fact is proved circumstantially on one side to be so, and on the other side, to be otherwise; this latter, being the demur-rant’s evidence, must be waived. 2d. He must waive all his evidence, the credit of which is impeached; as well where the witnesses are in conflict as to the fact, each standing fair, but one clearly mistaken; as where the party demurred to produces evidence impeaching the character of the witness. 3d. He is also to waive inferences from his own evidence, which do not necessarily flow from it. This seems to imply that he may have the benefit of parol evidence on his part, from which inferences may be drawn, the witness not being impeached. Who then is to decide, whether the inference necessarily flows from the fact proved by such a witness ? This dictum, if it goes as far as I have supposed, would perhaps cover the case before us; and if correct, enable us to look at some of the evidence. Has the party demurred to a right to say that the inference does not necessarily flow from it, and I will not admit it, or will he be compelled to admit it ? And if not, must the demurrant waive it, although the Court may think with him, that it does necessarily flow from the fact ? If it was left to the jury, could the Court tell them, they must infer the fact ? If they could, probably the Court itself might *21 infer it. But as I understand, unless perhaps as to what may be termed a conclusion of law, the Court could only tell the jury that they might, not that they ought, to in-for the fact. But how comes this primary evidence, from which the fact is to be inferred, to be put into the record, without the party demurred to admitting it such, and assenting to it? Can the Court say to a jury, “an unimpeached witness has proved so and so, from which you ought to infer so and so?” I presume not. If the Court could not thus instruct as to the weight of evidence, it would seem to follow that they could not weigh it when presented by demurrer; and the demurrant would be obliged to waive every inference that the other party would not admit. This would reduce the eases in which the demur-rant’s evidence would have any avail, to a few indeed. But, if the party demurred to voluntarily admits the inference, it is then not a demurrer to evidence, which coerces him, but a case agreed. He may be coerced to join in demurrer, because the other party admits all he can ask, and so makes a reference to a jury unnecessary; but he cannot be coerced to admit any thing, which it is his right to have tried by a jury. Nor will the bare feet of his joining in the demurrer, enable the Court to infer any thing against him, which they could not, had he refused. This new practice cannot have the effect to do away all the principles hitherto governing in cases of demurrers to evidence. According to this view of the matter, then, the demurrant cannot say in this case, “It is true, according to the evidence against me, I ought to admit so and so, as you demand; but my evidence shews I ought not; for, according to it, the fact is otherwise, and my witness is not impeached.” He must waive his evidence, or the Court must do it for him, as to this matter. Nor will he be permitted to set one set of circumstances against another, from which opposite conclusions may he drawn; but must go before the jury, who are to compare them and draw the inference one way or *22 the other; or he must surrender such evidence, and it is tu have no weight in the cause.
But, say that his evidence may be such as, if true, sets up a matter of avoidance, altogether consistent with the fact proved by the party demurred to, and which, admitting that fact, shews that he is nevertheless not respon sible. What is to be done in this ease ? Here the demur-rant would have no .hesitation in admitting the fact as proved on the other side; his whole defence depends on avoiding it, by a substantive and distinct fact. The facts proved by the party demurred to, we will say, then, are set down on the record, as admitted; and the-demurrant then proceeds to insert his evidence in the demurrer. The demurrer, then, will not conclude in the usual form, “ that the matter so offered by the plaintiff,” for instance, “is not sufficient to maintain his action;” and that “he (the demurrant) is not bound by law to answer to it;” but precisely the reverse, to wit, that it is sufficient, and that he is bound to answer, and does answer thereto, by shewing in evidence so and so. If he can do this in substance, though it may not assume this precise form, then it will be thrown on the plaintiff to say, (also in substance, if not in form,) either that the fact is not so, “ your evidence is not true, and I put myself on the country,” or he will say, “your evidence of this new fact is circumstantial, loose, &c. and I will admit no inference from it.” Or, if it is not circumstantial, but direct, he will say, “I have impeached the credit of the witness, either by assailing his general character, or by shewing that though I cannot impeach his general character, he must be mistaken, the thing itself being incredible;” or, “ I have proved such and such facts, which are inconsistent with those supposed to be proved by your evidence.” What can the demurrant answer to this ? He will be deluded, if he supposes that his evidence is to be weighed by the Court in equal scales, against that of his opponent. On the contrary, he will be *23 ■called on to waive his evidence, and admit the facts which destroy his defence; for, if this would uot be the. course, the Court is to he put. as to both parties, in tho place of a jury, and to find in fact a special verdict
I believe the above investigation of the cases in this Court will show, whatever dicta there may be, that the principles recognized have not gone this far, so as thus to sanction the invasion of the jury trial. A practice, then, which might thus delude, ought, not to prevail, except under proper guards and explanations.
But, suppose this substantive, and independent defence consists of an undisputed fact, such, for instance, as tho patent in the case of Whittington v. Christian, about which the jury ought not to hesitate, and the only doubt is, whether in law, it is a defence. It may he said, that if the Court are called on to instruct the jury, they may, nevertheless, differ with the Court, as to the law, and the party may have no remedy but a new trial; and, after two such verdicts, he could, by our law, get no other trial. This is an argument, rather of inconvenience resulting from our law as to now trials, than one which answers the objections urged from the very nature of a demurrer to evidence., to shew the dangerous tendency of innovations upon it. Other means, perhaps, less dangerous, might be devised to obviate the inconvenience above stated. And if nothing better could be done, ought not the law as to new trials to he changed, so as not to prevent fifty, if necessary, in such a case, and that at. the costs of the party thus persisting to insist on a general verdict ? Whilst I would protect the trial by jury from invasion, I would squally protect the right of the Court to pronounce, what belongs to them, the law of the case. I atn not. to be understood as saying what ought to be done; but surely such a case as last put, seems to me more proper for an in - struction to the jury as to the law. than for a demurrer ip evidence. However, as a demurrer has been sustained ip. 'die case of Whittington v. Christian, it may be that is *24 such cases as that, and Hyer v. Shobe, and Biggers v. Alderson, above referred to, (where the demurrant’s evidence consisted altogether of matter of record,) that no harm would be done. Such cases would be few; but surely where the jury may find the fact differently even from what seems to be proved by the witnesses, the trial ought not to be withdrawn from them, but on terms that he who does withdraw it shall admit every thing which a jury might infer or find against him, and waive every thing disputed, though the evidence is in his favor, and perhaps not disputable. Such a practice well understood, would restrict to a few cases this complicated kind of demurrer to evidence, which, it seems to me, has hitherto not been defined with sufficient accuracy, and of which, the more I think, the more I doubt.
This case, however, is one about which there can be no doubt. The whole of the demurrant’s evidence consists of a train of circumstances, the only object of which is to shew a state of things precisely opposite to that which is to be inferred from the evidence on the other side, and not to set up a distinct defence consistent with it.
The judgment, then, must be affirmed, unless there is some ground on which this Court could award a venire de novo. It seems to me, that we cannot do this.
Suppose that the plaintiff introduces a witness, who is discredited, but as to whose evidence, if taken to be true, there are doubts whether it would support the issue on the part of the plaintiff. The defendant demurs, and puts liis evidence in the demurrer. This is taken to be waived, and the demurrer overruled, and judgment for the plaintiff. Would it be a ground for a new trial in the Court below, that he had been mistaken, had been deluded by this practice, and had been obliged to waive his best defence, and to rest his case on the sufficiency of the plaintiff’s evidence to prove the issue ? Perhaps not; but if it would, this Court cannot hear an original motion for a new trial. We must say, whether the issue on the *25 part of flic plaintiff is supported or not; that must bo our judg-r^nt, as decided in the case of Humphreys’ adm’r. v West’s adm’r. 3 Rand. 516. If it is, we must affirm; if it is not, then we may reverse and enter judgment the other way. Here the defendant had a clear right to demur to the plaintiff’s evidence, suhject to the rule that his must be waived, &ic. It was not the business of the Court below to apprise him of his danger in doing so; and it does not appear to me that we can relieve him from the conse quetires, and give him another chance before the jury.
As that Court, then, could not have refused a demurrer to the evidence, nothing was left for them, nor is there any thing left for us to do, but to pronounce the law on that demurrer. It is true that Court might have, heard a motion for a new trial, and I will not say that it would have been wrong to have granted it; hut we cannot do it.
This would be our course, it seems to me, in a case of property; and surely we ought not to go farther in a case for liberty.
On the whole, I think the judgment must be affirmed.
Judge Cabell.
Judith and her descendants were plaintiffs in the Court below, suing for their freedom. Green, as agent for the Commonwealth, claimed them as slaves belonging to Ball’s estate, and subject to the payment of a debt due from that estate to the Commonwealth. The plaintiffs admitted that Judith was, at one time, the property of Ball; but they claim now' to be free, on the ground that Ball either gave her, or sold her, when a small girl, to Barrow and his wife, who was Ball’s sister: that Burrow, afterwards, sold Judith and such of her descendants as were then born, to Hadley, who, by his last will and testament, emancipated them, at, the death of Barrow. It is admitted that the situation of Judith determines that of the other plaintiffs. If she is free, they are free also.
*26 The defendant demurred to the testimony of the plaintiffs; putting, however, his own testimony also, into the demurrer.
As this is a demurrer tendered by ihe defendant, the first subject of consideration, must be the evidence of the plaintiffs; for, if that be insufficient, the plaintiffs must be cast, on the ground of that insufficiency; and there could be no necessity for looking at the testimony of the defendant.
Although it is not the practice in England, to compel a joinder in demurrer, unless the demurrant will distinctly admit on the record, every fact, which the evidence demurred to conduces to prove, yet even there, after a demurrer has been joined, it is always considered that the demurrant admits, by the demurrer, every fact which the jury could have found upon the evidence demurred to. (See the opinions of Lord Mansfield, and of Buller, Justice, in Cocksedge v. Fanshaw, Douglas, 132, 134.) This is, a fortiori, the case in this country, where it is not the practice to require admissions to be made on the record, before the party can be compelled to join in demurrer.
Let us apply this principle to the case before us.
The plaintiffs proved by a witness, Field, that he boarded with Ball, two years, about the years 1770, 1771, and 1772; and went to school to Barrow: that Barrow had in his possession, during these two years, a negro girl about 10 or 11 years of age: that he knows not by_ what title Barrow held her, but supposes it was by loan from Bull, as Barrow was insolvent: that Barrow had no other negro in his possession: that Ball was a man without children, possessed of much property, and very kind to his relations. The plaintiffs also proved by Cardwell and Gray, that Barrow had undisturbed possession of Judith and her descendants, for thirty years previous to his death, which happened in the year 1809. They also gave in evidence, without objection on the part of the defendant, a statement in the hand-writing of Barroio, in which Barrow says, that in the year 1767, or 1768, Ball gave to him and his *27 wife a negro girl by the name of Jude, then about. 6 or 7 years old, to go under the denomination of his wife’s serTaut, in order to prevent her from being sold to pay his debts, he being much involved: that he raised her and child ron, and had peaceable possession of them, from the time of the gift to the time of making the statement, viz: hi 1808, without, interruption from any person whatever; that at the time of the gift, Ball was in flourishing circumstances, and had no children; and that, there was great friendship existing between him and Barrow. Strode proved that Ball told him he had sold Judith to Barrow; and that Barrow told him he had sold her and her descendants to Ilackley, on consideration of Hockley’s paying his debts. Gray also said that Barrow was always considered insolvent. Two of the witnesses for the plaintiffs speak of a report of Judith and her children then born, having been sold in the year 1788, or 1789, on an execution against Ball’s property, and having been bought by Ilackley, but they were not present at the sale, and knew nothing of it, of their own knowledge. Ilackley died before Barrow and Ball. His will is in the demurrer, and by it he emancipates the plaintiffs at the death of Barrow. Barrow’s will is also in the demurrer, and by it he confirms to them their freedom. This, as J understand it, is the sum and ¿substance of the evidence of the plaintiffs.
What conclusions would a jury have drawn from this testimony? If it be considered alone, unaffected by the testimony of the defendant, it would be impossible to raise a doubt about it. It proves unquestionably that Judith was given or sold by Ball to Barrow: that Barrow had uninterrupted possession, under that gift or sale, for 30 years, to the day of his death; and that he sold her and her children to Ilackley, who emancipated them by his will. If there had been no other testimony, no body could have questioned the propriety of overruling the demurrer.
Hut the important question in this ease is, what effect '.hail bo allowed to < he evidence of the defendant, inserted in the demurrer"
*28 Before we proceed to the solution of this question, it is pr0per that we should determine with precision, the nature of the testimony relied on by the defendant. I have exam'oed it with great care, and have come to the conelu-ion that the whole of it is in conflict with the evidence of the plaintiffs. The evidence on the part of the plaintiffs clearly shews a gift or sale of Judilh-by Ball to Barrow, and a sale by Barrow to Hackley. The whole of the testimony of the defendant goes to prove only a loan from Ball to Barrow, and a fraudulent purchase by Hackley from Bull. The facts relied on by the defendant cannot be true, if those relied on by the plaintiffs be true. They are inconsistent with each other, and cannot stand together.
The real question then, in this cause, is, what shall be done in a case of such contradictory testimony? The opinion delivered by Judge Green, in the case of Whittington v. Christian, 2 Rand. 357, in which opinion, (so far as relates to this point) I understood the whole Court to concur, furnishes a ready answer. Although it is the practice in this country, sanctioned by repeated decisions of this Court, to allow the whole of the evidence on both sides to be inserted in a demurrer, yet we are “then to consider the demurrer, as if the demurrant had admitted all that could reasonably be inferred by a jury from the evidence given by the other party, and waived all the evidence on his part, which contradicts fhat offered by the other party, or the credit of which is impeached; and all inferences from his own evidence, which do not necessarily flow from it.” I do not perceive in the case before us, any direct, impeachment of the credit of the witnesses. But, evidence is not necessarily exempt from the charge of being contradictory, merely because there is no direct impeachment of the credit of witnesses; nor because the witnesses are not found to give contradictory accounts of the same transaction. That evidence is clearly contradictory, which seeks to establish a case, not only different from, but inconsistent with, the case already proved. It is un *29 questionable, that the demurrant would not be permitted, after demurrer, to rely on testimony directly disproving the case proved by the other party, and admitted by the demurrer» It is equally clear to my mind, that he cannot be permitted to rely on testimony, which indirectly disproves it, by proving a case inconsistent with it.
This principle is decisive of the ease before us. The plr.intiff’s testimony shews a good cause of action. The defendant has shewn nothing, which, admitting the truth of the plaintiffs5 testimony, is calculated to avoid it. His whole testimony is contradictory of that of the plaintiffs; and being of that character, the demurrer is to be considered and decided, as if be had ic waived55 it. The demurrer was, therefore, rightly overruled, and judgment entered for the plaintiffs.
Whether the defendant ought, in regard to his own interests, to have demurred under the circumstances of this east;, was a matter for his own consideration, and with which we can have nothing to do. He surely had a right to waive the benefit of his own contradictory testimony, and to rely on the supposed insufficiency of the testimony of his adversary. If he has been mistaken in the estimate which he formed of the evidence of his adversary, or even if he has been mistaken in the opinion be entertained of what he would be considered as waiving by the demurrer, and has, in consequence of that mistake, adopted a course injurious to his interests, it is not for us, when there is no error in the judgment of the Court, to remedy the inconvenience by reversing the judgment. It would be beyond the legitimate powers, even of a Court of Chancery, to grant relief in such case, by means of a new trial. Oswald, Deniston & Co. v. Tyler, 4 Rand. 19.
If it be said that the demurrer should be set aside and a venire de novo awarded, under the authority of the case of Taliaferro v. Gatewood, 6 Munf. 320, I reply that that case was very unlike this. There, the Court saw that a fact had been omitted. ie which it judi *30 cially knew had existence, and for want of which, a decision contrary to the right of the ease may have taken place;” and it was held error in the Court, not to have called for the insertion of the fact. As, to that case, I would farther observe, that the Court were not unanimous in the decision; and although I was of the majority, yet I am, on subsequent reflection, inclined to doubt the correctness of the decision.
If, in the case before us, the defendant’s testimony, instead of contradicting the evidence of the plaintiffs, had admitted its truth, and, as in the case of Whittington v. Christian, 2 Rand. 353, had merely set out a different case, not inconsistent loith that made out by the plaintiffs, but presenting a question whether, on the whole evidence, the plaintiffs had exhibited a cause of action, it would be a fit occasion for discussing the propriety of the practice of introducing into the demurrer, the evidence on both sides. When the case shall really occur, I hope we shall have a fuller Court, when the question may be put at rest.
Judgment affirmed.

 The President and Judge Green absent; the latter being a nominal party.